# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARK BOYD,                          )
                                    )
      Petitioner,                 )
                                    )
      vs.                         )     **Case No. 4:03 CV 551 CDP (LMB)**
                                    )
LARRY ROWLEY and                    )
JEREMIAH "JAY" NIXON,[1]             )
                                    )
      Respondents.                )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Mark Boyd for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

## Procedural History

Petitioner is presently incarcerated at Northeast Correctional Center in Bowling Green, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. See Respondents' Exhibit B at 282-85. On October 30, 1997, petitioner was found guilty after a jury trial of two counts of second degree murder, and two counts of armed criminal action. See id. He was sentenced to ten years on each murder count and three years on each armed criminal action count, to be served consecutively, for a total of twenty-six years imprisonment. See id.

---

[1]The Attorney General of the State of Missouri is a proper party respondent because petitioner is challenging present and future sentences in this action. See Rule 2 (b), Rules Governing Section 2254 proceedings in the United States District Courts.

Petitioner raised the following points on direct appeal of his convictions: (1) the trial court erred in granting the prosecution's motion in limine and excluding the statements of Michael Durley and Randy Wilkes; (2) the trial court erred in sustaining the prosecutor's objections and refusing to admit into evidence Robert Bobo's trip notes; (3) the trial court erred in refusing to submit petitioner's proposed jury instructions; (4) the trial court erred in allowing the State to play the whole videotaped statement of Willie Nettles; and (5) the trial court erred in submitting jury instructions for murder in the second degree and the related armed criminal action counts. See Resp't Ex. F. On March 9, 1999, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions. See Resp't Ex. H.

On October 13,1999, petitioner filed a pro se motion to vacate, set aside, or correct the judgment of the Circuit Court of the City of St. Louis, Missouri, pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. I at 3-11. On March 5, 2000, after appointment of counsel, petitioner filed a "First Amended Motion and Request for Evidentiary Hearing," in which he argued that he was denied effective assistance of counsel for the following reasons: (1) trial counsel failed to preserve for review the trial court's error in the exclusion of the statements of Michael Durley and Randy Wilkes; (2) trial counsel failed to object to the State's final argument where the State argued inconsistent theories; (3) trial counsel failed to call Lamont Galliday to testify; (4) trial counsel failed to move to strike Juror Ralph L. Rice as being ineligible because of a felony conviction; (5) trial counsel failed to object during trial and raise in his motion for new trial the State's offering Instruction Number 8, the instruction for second degree murder; (6) appellate counsel failed to raise on appeal the court's error in excluding the statements of Michael Durley and Randy Wilkes; and (7) appellate counsel failed to raise on appeal the issue that one of

the jurors was ineligible to serve on the jury. See id. at 22-46. On October 29, 2001, the motion court denied petitioner's motion for postconviction relief in all respects. See id. at 47-54. Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 56.

Petitioner raised five points on appeal from the denial of postconviction relief. See Resp't Ex. K. Petitioner first argued that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel failed to move to strike Juror Ralph Rice and appellate counsel failed to brief as error that Juror Rice was ineligible to be a juror. See id. at 17. In his second point relied on, petitioner claimed that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel failed to preserve for appellate review the exclusion of Michael Durley's and Randy Wilkes' declarations against penal interest. See id. at 19. In his third point relied on, petitioner argued that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel failed to call Lamont Galliday as a witness. See id. at 21. In his fourth point relied on, petitioner claimed that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel failed to object to and include in the motion for new trial the submission of Instruction Number 8, the instruction for second degree murder concerning Kyunia Taylor. See id. at 23. In his final point relied on, petitioner argued that the motion court clearly erred in denying his postconviction relief motion without determining whether the mandate of Sanders v. State was satisfied because the record shows that petitioner was abandoned by postconviction counsel. See id. at 24. On October 1, 2002, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief. See Resp't Ex. M.

On May 9, 2003, petitioner, pro se, filed the instant petition for a writ of habeas corpus, raising the following grounds for relief: (1) the trial court erred in submitting jury instructions 8, 12, 16, and 18, the verdict directors for second-degree murder and armed criminal action, because the instructions were not supported by the evidence; (2) the trial court erred in granting the prosecution's motion in limine to exclude inculpatory statements of Michael Durley and Randy Wilkes; (3) the trial court erred in refusing to submit petitioner's instructions Y and Z to the jury; (4) the trial court erred in excluding Robert Bobo's trip notes as evidence; (5) the trial court erred in admitting the videotaped statement of Willie Nettles into evidence and allowing the State to play the tape for the jury; (6) he received ineffective assistance of counsel because trial counsel failed to strike Juror Ralph Rice and appellate counsel failed to brief this issue; (7) he received ineffective assistance of counsel because trial counsel failed to preserve for appellate review his claim that the trial court erred in granting the prosecution's motion in limine to exclude inculpatory statements of Michael Durley and Randy Wilkes; (8) he received ineffective assistance of counsel because trial counsel failed to call Lamont Galliday as a witness; and (9) he received ineffective assistance of counsel because trial counsel failed to object to jury instruction Number 8, the verdict director for the second-degree murder of Kyunia Taylor. See Doc. No. 4. On June 10, 2003, respondents filed a Response to Order to Show Cause, in which they argue that petitioner has procedurally defaulted his second ground for relief, and that petitioner's remaining grounds for relief fail on their merits. See Doc. No. 8. Petitioner has also filed a Reply to respondents' Response to Order to Show Cause, in which he provides further argument in support of his petition. See Doc. No. 10.

## Facts

The sufficiency of the evidence is not in dispute.  The evidence adduced at trial revealed that petitioner, who was twenty-nine years old, lived next door to Kyunia Taylor, who was fourteen years old.  Petitioner had sex with Ms. Taylor, who became pregnant.  Ms. Taylor's mother discovered that Ms. Taylor was pregnant, and told petitioner that they would conduct paternity tests after the child was born and would press charges if petitioner was the father.  Petitioner was already making child support payments for two children and was faced with allegations of paternity for a third child.  Petitioner paid Malik Nettles $4000 to kill Ms. Taylor.

On February 29, 1996, Malik Nettles walked up to a school bus, got on the bus, shot the bus driver three times, and shot Kyunia Taylor five times.  Kyunia Taylor, who was six months pregnant at the time of the shooting, died from the gunshot wounds that went through her abdomen and chest.  Her baby, Diamond Taylor, was delivered by Cesarean section, but subsequently died from extensive brain damage that was caused by inadequate blood supply due to the gunshot wounds sustained by her mother.  DNA testing revealed that Mark Boyd was the father of Diamond Taylor.

## Discussion

### I.    Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S.Ct. at 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1410, 120 S.Ct. 522.

## II.    Petitioner's Claims

Petitioner raises nine grounds for relief. The undersigned will address each ground for

relief in turn.

1.     **Ground One**

In his first ground for relief, petitioner argues that the trial court erred in submitting jury instructions 8, 12, 16, and 18, the verdict directors for second degree murder and armed criminal action, because the instructions were not supported by the evidence. Petitioner contends that the evidence reveals that he either deliberated and thus was guilty of first-degree murder or was not guilty of any crime. Respondents argue that the Missouri Court of Appeals properly found that it was not error to submit a lesser-included offense.

The Missouri Court of Appeals for the Eastern District summarily dismissed petitioner's claim, finding it "wholly without merit." Resp't Ex. H at 7.

Ordinarily, federal habeas relief is not available in cases of faulty jury instructions. See Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991). "For a petitioner to obtain relief based on a faulty jury instruction, the instruction must 'so infect[ ] the entire trial that the resulting conviction violates due process.'" Clemmons v. Delo, 177 F.3d 680, 685 (8th Cir. 1999)(quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)). Before habeas relief is granted, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Beets v. Iowa Dep't of Corrections Serv., 164 F.3d 1131, 1134 (8th Cir. 1999)(quoting Cupp, 414 U.S. at 146, 94 S. Ct. at 400). The challenged jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions and the trial record as a whole. See Estelle, 502 U.S. at 72, 112 S. Ct. 482. Additionally, the defined category of infractions that violate fundamental

fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Id. at 502 U.S. 73, 112 S. Ct. at 482.

Petitioner contends that the trial court erred in submitting instructions on second degree murder because the evidence presented at trial reveals that he either deliberated and thus was guilty of first-degree murder or was not guilty of any crime. To be convicted of murder in the first degree, a person must "knowingly" cause the death of another person "after deliberation upon the matter." Mo. Rev. Stat. § 565.020(1) (1994). Murder in the second degree occurs if a person "knowingly" causes the death of another person or "with the purpose of causing serious physical injury to another person, causes the death of another person." Mo. Rev. Stat. § 565.021(1) (1994). Murder in the second degree is a lesser degree offense of murder in the first degree. See Mo. Rev. Stat. § 565.025(2) (1994). Section 545.030 provides that no criminal judgment shall be "stayed, arrested or in any manner affected...[f]or any error committed at the instance or in favor of the defendant; nor...[b]ecause the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted." Mo. Rev. Stat. § 545.030.1(16), (17) (1994).

Here, the submission of the challenged instructions did not deprive petitioner of his constitutional rights. The trial court's decision to instruct down by submitting instructions on second degree murder favored petitioner. As the Missouri Supreme Court noted in State v. Goddard:

> [t]here would be a strange twist in the criminal law if a defendant who had the benefit of the jury's mercy could then use the resultant conviction as a basis for avoiding conviction on the higher offense charged, on the less serious offense of which he was convicted, and possibly, of any offense whatsoever.

649 S.W.2d 882, 889 (Mo. banc 1983). Petitioner states that the evidence adduced at trial

reveals that he deliberated upon the murder of the victim. If petitioner deliberated upon the murder as he claims, then he possessed the requisite mental state to support a conviction of second degree murder, which requires only that he "knowingly" caused the death of another person. Petitioner cannot use the jury's mercy in convicting him of a lesser included offense to avoid his conviction.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.      Ground Two**

In his second ground for relief, petitioner argues that the trial court erred in granting the prosecution's motion in limine to exclude inculpatory statements of Michael Durley and Randy Wilkes. Petitioner contends that these statements should have been admitted as declarations against penal interest. Respondents argue that the statements were unreliable and were thus properly excluded.

At issue are out-of-court statements made by Michael Durley and Randy Wilkes shortly after the shooting, in which they implicated themselves and each other in the crime. The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> In his first point on appeal, [petitioner] argues that the exclusion of Michael Durley's and Randy Wilkes' out-of-court statements indicating that they had committed the murders, along with the corroborative testimony of Lamont Galliday identifying Durley as the first man he had seen fleeing from the scene of the crime moments after the shooting occurred, violated his due process right to a fair trial. He contends that the statements by Durley and Wilkes were declarations against their penal interest, bearing sufficient indicia of reliability to require their admission into evidence under the holding of Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038 (1973), and the Missouri cases decided under Chambers, such as State v. Blankenship, 830 S.W.2d 1 (Mo. banc 1992).
> In Chambers the U.S. Supreme Court held that declarations against penal interest, such as extrajudicial confessions, are admissible in criminal proceedings as an exception to the hearsay rule when (a) the statements if admitted and believed would completely

exonerate the defendant and (b) the statements were "originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Chambers v. Mississippi, 93 S. Ct. at 1048. The indicia of reliability that the Court relied on in that case were (1) that each confession was "in a very real sense self-incriminatory and unquestionably against interest," (2) that each statement had been spontaneously made to a close acquaintance shortly after the murder occurred; and (3) that the statements were corroborated by some other evidence in the case. Id. Additionally, courts have also noted that in Chambers the inculpatory statements were made on several occasions rather than merely once, and that there was independent evidence placing the declarant at the scene of the crime. State v. Blackman, 875 S.W.2d 122, 142 (Mo. App. E.D. 1994). [Petitioner] argues that the out-of-court statements by the two unavailable witnesses at issue in this case [footnote omitted], taken together, satisfy all of the criteria for reliability set forth in Chambers and therefore should not have been excluded at trial. This was prejudicial error, he claims, because (1) the State's evidence against [petitioner] was far from overwhelming; (2) the State's whole case was that [petitioner] supposedly hired Malik Nettles to do the shooting, so that if Nettles did not shoot Kyunia Taylor then [petitioner] could not be guilty; and thus (3), had the jury been able to hear that Michael Durley may have committed the shootings, it likely would have altered the outcome of the trial.

This claim has not been preserved for appellate review. A trial court's ruling granting a motion in limine is interlocutory only and subject to change during the course of trial; such a ruling, therefore, in and of itself, preserves nothing for appeal. State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992). Rather, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained the proponent must then make an offer of proof. Id. Such a requirement is strictly applied because the trial judge should be given an opportunity to reconsider his prior ruling against the backdrop of the evidence adduced at trial. State v. Sandusky, 761 S.W.2d 710, 713 (Mo. App. E.D. 1988). Our Supreme Court has stated that this is *especially* true with respect to a defendant's attempt under the doctrine of Chambers v. Mississippi, supra, to introduce into evidence the declaration of another against the declarant's penal interest. State v. Purlee, 839 S.W.2d at 592. This is because both Chambers itself and the Missouri cases decided under it indicate that the question of whether such statements should be admitted "is heavily fact-dependent," so that "only with a fully developed factual context can a trial judge make a ruling that requires the balancing of a number of relevancy, reliability and other issues." Id.

Here, although [petitioner's] counsel did make the proper objections as well as detailed offer of proof before trial at the hearing on the State's motion in limine, and also raised the issue again in his motion for new trial, he never raised the matter *during* trial. It thus is not preserved for review. The question of whether to consider an unpreserved matter for possible plain error is entirely discretionary with an appellate court. State v. Frazier, 927 S.W.2d 378, 379 (Mo. App. W.D. 1996); State v. Keely, 791 S.W.2d 864, 865 (Mo. App. E.D. 1990). Defendant has not requested plain error review on this issue and, in the exercise of our discretion, we decline to grant such review.

Resp't Ex. H at 7-9. Respondents contend that, because the Missouri Court of Appeals declined to review petitioner's claim because petitioner failed to properly preserve the claim at trial, petitioner's claim is procedurally defaulted.

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994)). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988). In the present case, petitioner has defaulted his second ground for relief by failing to object at trial. Petitioner fails to allege "cause" for his procedural default. As such, this court need not address the "actual prejudice" prong of the inquiry. See Leggins, 822 F.2d at 768.

A federal habeas court may also reach the merits of procedurally defaulted claims where

the petitioner can demonstrate that a "miscarriage of justice" exception applies. This narrow

exception is limited to extraordinary circumstances where actual innocence can be demonstrated.

See Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The

petitioner must show that a constitutional violation "probably resulted" in the conviction of an

innocent person. See Schlup v. Delo, 513 U.S. 298, 326-29, 115 S.Ct. 851, 867-68, 130 L.Ed.2d

808 (1995). Petitioner does claim that his procedural default should be excused under the

miscarriage of justice exception. The evidence, however, is strongly supportive of petitioner's

guilt and petitioner has presented no additional evidence suggesting his innocence. Petitioner's

bare allegation that he is innocent is insufficient to excuse his procedural default. Thus, petitioner

has procedurally defaulted his second ground for relief.

Even if petitioner's second ground for relief were not procedurally defaulted, it fails on its

merits as well. Generally, questions concerning the admissibility of evidence are matters of state

law, and the issue on habeas review is not whether the evidence was properly admitted under state

law. See Estelle, 502 U.S. at 67, 112 S. Ct. at 480. Evidentiary issues, however, can form the

basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds

v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the

basis for federal habeas relief under the due process clause only when they were so conspicuously

prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due

process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this

standard, a petitioner must show a reasonable probability that the evidentiary errors affected the

trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

Hearsay statements are generally not admissible at trial unless they fall into a recognized

exception to the hearsay rule.  See State v. Shaw, 14 S.W.3d 77, 81 (Mo. Ct. App. 1999).  The

United States Supreme Court has recognized an exception to the hearsay rule applicable to

declarations against penal interest.  See Chambers v. Mississippi, 410 U.S. 284, 299, 93 S.Ct.

1038, 1047, 35 L.Ed.2d 297 (1973).  This exception is founded on the assumption that a person is

unlikely to fabricate a statement against his own interest at the time it is made.  See id. at 410

U.S. 299, 93 S.Ct. 1047-1048.  The Court held that where the indicia of reliability existed and the

declarant's statements if true, would exonerate the accused, the hearsay statements could not be

excluded.  See id. at 410 U.S. 302-03; 93 S.Ct. 1049.  The Court limited its holding to the facts

of the Chambers case.  See id. at 410.  The Court considered the following factors:

> [f]irst, each of McDonald's confessions was made spontaneously to a close acquaintance
> shortly after the murder had occurred.  Second, each one was corroborated by some other
> evidence in the case-McDonald's sworn confession, the testimony of an eyewitness to the
> shooting, the testimony that McDonald was seen with a gun, testimony that McDonald
> was seen with a gun immediately after the shooting, and proof of his prior ownership of a
> .22-caliber revolver and subsequent purchase of a new weapon.  The sheer number of
> independent confessions provided additional corroboration for each.  Third, whatever
> may be the parameters of the penal-interest rationale, each confession here was in a very
> real sense self-incriminatory and unquestionably against interest. See United States v.
> Harris, 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971); Dutton v. Evans,
> 400 U.S., at 89, 91 S.Ct., at 219.  McDonald stood to benefit nothing by disclosing his
> role in the shooting to any of his three friends and he must have been aware of the
> possibility that his disclosure would lead to criminal prosecution.  Indeed, after telling
> Turner of his involvement, he subsequently urged Turner not to 'mess him up.'  Finally, if
> there was any  question about the truthfulness of the extrajudicial statements, McDonald
> was present in the courtroom and was under oath.  He could have been cross-examined by
> the State, and his demeanor and responses weighed by the jury.  See California v. Green,
> 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).  The availability of McDonald
> significantly distinguishes this case from the prior Mississippi precedent, Brown v. State,
> supra, and from the Donnelly-type situation, since in both cases the declarant was
> unavailable at the time of trial.

Id. at 410 U.S. 300-01, 93 S.Ct. at 1048-49.

The statements at issue in the instant case lack the reliability required by the factors

enunciated in <u>Chambers</u>. First, the declarants, Michael Durley and Randy Wilkes, did not appear at trial and were unavailable to testify. At the hearing on the motion in limine, the State and the defendant stipulated that Michael Durley and Randy Wilkes were both unavailable, because if called to the witness stand they would both assert their Fifth Amendment right not to testify. <u>See</u> Response to Order to Show Cause, Doc. No. 8 at 10, citing Footnote 2 of the original opinion of the Missouri Court of Appeals. For this reason alone, the trial judge cannot be convicted of error for excluding the testimony of Durley and Wilkes. Being unavailable, the declarants could not have been cross-examined by the State and the jury was not able to judge their credibility.

Second, the confession of Michael Durley was made to police, and not to a close acquaintance shortly after the crime occurred. <u>See</u> Resp't Ex. D at 4-8. In addition, Mr. Durley's statements are not supported by the facts of this case. <u>See id.</u> at 5-7. The respondent sets out the factual inconsistencies between Durley's statements and the testimony elicited at trial in his Response to Order to Show Cause. <u>See</u> Doc. No. 8 at 15. With regard to the statements Michael Durley and Randy Wilkes made to Lonzell Wilkes, Lonzell Wilkes indicated that Michael Durley and Randy Wilkes each attempted to place the blame for the crime on the other. <u>See</u> Resp't Ex. D at 9. These statements, therefore, are not against penal interest. The reliability of Durley's statements becomes even more questionable in that on March 7, 1996, Michael Durley spoke with Police Officer Burgoon and recanted what he had told Detectives Pappas and Nickerson earlier in the day, saying he had not told the truth to Pappas and Nickerson and had made the taped statement because he was scared. The same day, Durley gave contradictory stories to a polygraph operator admitting twice he did the shooting and then denying twice that he shot anybody. <u>See id.</u> at 5-6. The statements of Michael Durley and Randy Wilkes at issue were not reliable and were thus

properly excluded by the trial court.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.      Ground Three**

In his third ground for relief, petitioner argues that the trial court erred in refusing to submit petitioner's instructions Y and Z to the jury.  These instructions referred to the State's burden of proof to show that petitioner was present at the scene of the crime.  Respondents contend that the Missouri Court of Appeals properly rejected this claim.

The Missouri Court of Appeals summarily dismissed this claim, finding it "wholly without merit."  Resp't Ex. H at 7.

Defense Instruction Y provides as follows:

> [o]ne of the issues in this case is whether the defendant was present at Desoto and Blair Avenues in St. Louis, Missouri on February 29, 1996, at approximately 7:00 a.m. On that issue, you are instructed as follows:
> 1.      That the State has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place of the offense is alleged to have been committed.
> 2.      If the evidence in this case leaves in your mind a reasonable doubt that the defendant was present at DeSoto and Blair Avenues in St. Louis, Missouri on February 29, 1996, at approximately 7:00 a.m., then you must find the defendant not guilty.

Resp't Ex. D at 1.

The trial court did not err in failing to submit Defendant's Instruction Y.  The State's theory at trial was that the murder was a contract killing and that Malik Nettles was the shooter. The verdict director for Count I, murder in the first degree, required that the jury find Malik Nettles committed all of the elements of that offense and that petitioner aided Mr. Nettles after deliberation.  In fact, the prosecutor stated as follows during closing argument:

[w]e aren't contending that Mark Boyd was there by the bus at the time that that shooting occurred. That is not the basis upon which we have charged him. That is not the basis upon which you will convict him.

The basis upon which he will be convicted is that he aided, encouraged the person that got--that got on the bus to do what he did. He set the wheels in motion for that particular crime to occur. He made the statements, he made the plans, he--he stalked her, he did--he did everything but get on the bus with Malik...

Resp't Ex. A-16 at 3097. Thus, the jury was not required to find that petitioner was at the scene of the crime in order to find him guilty under a theory of accomplice liability.

Defendant's Instruction Z states as follows:

One of the issues in this case is whether the defendant was present at a service station lot at St. Charles Rock Road and Pennsylvania in St. Louis County, Missouri in the evening hours between February 21, 1996 and February 29, 1996. On that issue, you are instructed as follows:

1.      That the State has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place of the offense is alleged to have been committed.

2.      If the evidence in this case leaves in your mind a reasonable doubt that the defendant was present at St. Charles Rock Road and Pennsylvania in St. Louis County, Missouri in the evening hours between February 21, 1996, and February 29, 1996, then you must find the defendant not guilty.

Resp't Ex. D at 2.

Petitioner's argument that the trial court erred in failing to submit Instruction Z also fails. This instruction relates to one of several meetings petitioner had with Malik Nettles regarding the planning of the crime. The State argued that petitioner paid Malik Nettles $2000.00 for the killing at this particular meeting, which occurred at a service station located at the intersection of St. Charles Rock Road and Pennsylvania. The State, however, also argued that petitioner paid Malik Nettles $2000.00 at a different meeting. See Resp't Ex. A-12 at 2362-2365; Resp't Ex. A-13 at 2543-2550. As such, the jury still could have found petitioner guilty even if they determined that he was not present at the meeting at the service station. Thus, the trial court did not err in

declining to submit this instruction to the jury.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### 4.      Ground Four

In his fourth ground for relief, petitioner argues that the trial court erred in excluding Robert Bobo's trip notes as evidence at trial.  Respondents contend that the trial court did not err in excluding cumulative evidence.

The Missouri Court of Appeals rejected this claim as "wholly without merit."  Resp't Ex. H at 7.

At issue are the handwritten trip notes of Robert Bobo, which petitioner claims establish an alibi.  Specifically, petitioner claims that these notes show that he was out of the St. Louis area from February 21, 1996, through February 28, 1996, training with Mr. Bobo to become an over-the-road truck driver during the time period that he allegedly met with Malik Nettles.  First, these handwritten notes are hearsay.  Second, even if the notes were admissible under the business records exception to the hearsay rule, they would have been cumulative to other evidence that was admitted at trial.  The trial court allowed petitioner to admit the records from Mr. Bobo's employer, Hogan Transport, that showed when Mr. Bobo worked.  See Resp't Ex. A-15 at 2841-2845.  In addition, Mr. Bobo testified at trial regarding the trip at issue.  Further, as discussed with respect to petitioner's third ground for relief, petitioner's absence at the February 1996 meeting would not have established his innocence of the crime.  Thus, petitioner cannot show that he was prejudiced by the trial court's evidentiary ruling.  See Bounds, 151 F.3d at 1119.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be

denied.

**5.      Ground Five**

In his fifth ground for relief, petitioner argues that the trial court erred in admitting the videotaped statement of Willie Nettles into evidence and allowing the State to play the tape for the jury.  Petitioner claims that the statement contained references to petitioner's prior bad acts. Respondents contend that the admission of the statement did not deprive petitioner of due process.

The Missouri Court of Appeals summarily denied petitioner's claim, finding it "wholly without merit."  Resp't Ex. H at 7.

Petitioner cannot demonstrate prejudice by the admission of the videotaped statement. Willie Nettles, the brother of Malik Nettles, testified on behalf of the State.  In addition, Willie Nettles provided a videotaped statement to police, which was played to the jury.  Petitioner claims that he was prejudiced by the trial court allowing the jury to view the videotaped statement because Willie Nettles stated that petitioner smoked marijuana with Malik Nettles during one of their meetings.  In light of the evidence presented at trial, which showed that petitioner hired Malik Nettles to murder a fifteen-year-old pregnant girl to avoid responsibility for the child, petitioner cannot demonstrate that he was prejudiced by an isolated statement that he smoked marijuana on one occasion.  Petitioner was not deprived of due process due to the admission of this statement.

Accordingly, the undersigned recommends that petitioner's fifth ground for relief be denied.

**Ineffective Assistance of Counsel Claims: Grounds Six, Seven, Eight, and Nine**

Petitioner asserts ineffective assistance of counsel claims in his sixth, seventh, eighth, and ninth grounds for relief. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S.Ct. at 2067. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.' " Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).

**6.  Ground Six**

In his sixth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to strike Juror Ralph Rice and appellate counsel failed to brief this issue. Respondents contend that this claim should be denied because petitioner cannot demonstrate prejudice.

Petitioner argues that Juror Ralph Rice was ineligible to be a juror because he had a felony conviction. During voir dire, Juror Rice was called to the bench because the State believed he might have a criminal record. The following exchange occurred:

> THE COURT: Mr. Rice, have you ever lived in Troy, Missouri?
> VENIREMAN RALPH RICE: No. I've never lived there. I was--I was in jail up there.
> THE COURT: Okay.
> VENIREMAN RALPH RICE: The charges were dropped.
> THE COURT: All right. You were arrested for what now, burglary?
> VENIREPERSON RALPH RICE: Yeah, that's what they said. I was with the guy that did it.
> THE COURT: All right. Did you go to court and plead guilty to the charge?
> VENIREMAN RALPH RICE: No.
> THE COURT: You were placed on probation?
> VENIREMAN BROWN: I was placed on probation, yes, but I never went to court for it.
> THE COURT: You didn't go to trial?
> VENIREMAN RALPH RICE: I didn't, no.
> THE COURT: You didn't?
> VENIREMAN RALPH RICE: I was told to report to a probation and parole officer here in St. Louis.
> THE COURT: And you never stood in front of a judge and pled guilty to the crime?
> VENIREMAN RALPH RICE: No.
> THE COURT: How long did you report on probation?
> VENIREMAN RALPH RICE: Five years, and I was off in '85.
> [DEFENSE COUNSEL]: You didn't mark that down on the questionnaire, did you or didn't you?
> VENIREMAN RALPH RICE: No, I did not.

Resp't Ex. A-6 at 1093-1094.

The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> In this case, there is nothing in the record to indicate that counsel's failure to move to strike Rice affected the fairness of [petitioner's] trial. Rice had been on probation, but not since 1985. According to Rice, he never stood before a judge to plead guilty to a crime. Based on this information, the court believed that Rice was eligible to serve as a juror. Nothing in the record shows Rice's presence on the jury prejudiced [petitioner] in any way. As a result, the fairness of [petitioner's] trial was not affected.
>
> Boyd further contends that his appellate counsel was ineffective for failing to raise improper jury selection on appeal. To assert a claim of ineffective assistance of appellate counsel, a movant must meet the general requirements of *Strickland*, 466 U.S. 668 (1984). *See Moss*, 10 S.W.3d at 514 (citing Reuscher v. State, 887 S.W.2d 588, 591

(Mo. banc 1994)); *Burton v. State*, 68 S.W.3d 490, 494 (Mo. App. E.D. 2001). In addition, a movant must show that the error that appellate counsel did not raise would have required reversal if it had been asserted. *See Moss*, 10 S.W.3d at 514 (citing Reuscher, 887 S.W.2d at 591); *Burton*, 68 S.W.3d at 494. The point of error not raised on appeal must be so substantial as to amount to a manifest injustice or a miscarriage of justice. *Moss*, 10 S.W.3d at 514-515 (citing Reuscher, 887 S.W.2d at 591).

        Trial counsel was not ineffective for failing to move to strike the juror. For the same reasons, this alleged error would not have required reversal on appeal. Thus, appellate counsel was not ineffective for failing to raise the error. The judgment of the motion court is not clearly erroneous.

Resp't Ex. M at 5-6.

The Missouri Court of Appeals properly applied <u>Strickland</u> and determined that petitioner did not receive ineffective assistance of trial or appellate counsel. Juror Rice indicated to the trial court that he had never appeared before a judge and that his term of probation ended in 1985. As such, petitioner has not shown that Juror Rice is, in fact, a convicted felon. Even if petitioner were able to show that Juror Rice were a convicted felon, he is unable to demonstrate that he was prejudiced by trial counsel's failure to strike Juror Rice. Similarly, petitioner cannot show that he was prejudiced by appellate counsel's failure to raise this claim on appeal. Thus, petitioner has not shown that trial counsel or appellate counsel failed to exercise the degree of skill and diligence of a reasonably competent attorney.

Accordingly, the undersigned recommends that petitioner's sixth ground for relief be denied.

### 7.    Ground Seven

In his seventh ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to preserve for appellate review his claim that the trial court erred in granting the prosecution's motion in limine to exclude inculpatory statements of Michael

Durley and Randy Wilkes. Respondents contend that trial counsel was not ineffective for failing to make a meritless objection.

The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> [i]n Point II, [petitioner] alleges that his trial counsel was ineffective for failing to preserve for appeal the exclusion of statements made by other potential suspects. Before trial, the State brought a motion in limine to exclude the inculpatory statements. Trial counsel made proper objections and a detailed offer of proof at the hearing on the State's motion and raised the issue again in [petitioner's] motion for new trial. But trial counsel never raised the matter during trial, and thus the matter was not preserved for appeal. [Petitioner] contends that his trial counsel was ineffective for failing to preserve this issue.
>
> Whether or not the trial court erred in excluding these statements was addressed by this Court on direct appeal. *State v. Boyd*, 992 S.W.2d 213 (Mo. App. E.D. 1999). This Court found that the claim was not preserved for review and, in the exercise of its discretion, declined to review the matter as plain error. *Id.* at 218.
>
> An issue that has been considered on direct appeal cannot be reconsidered in a post-conviction proceeding by transforming it into an ineffective assistance of counsel claim. *Hannah v. State*, 816 S.W.2d 1, 3 (Mo. App. E.D. 1991). "[I]n most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Deck v. State*, 68 S.W.3d 418, 428 (Mo. banc 2002). The question is whether the case before us falls "within this limited range of cases in which plain error did not exist, but *Strickland* prejudice is present because 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* at 429 (citing Strickland, 466 U.S. at 686). We find nothing in the record to show that counsel's performance "undermined the proper functioning" of [petitioner's] trial.

Resp't Ex. M at 6-7.

The undersigned has found with respect to petitioner's second ground for relief that the hearsay statements of Michael Durley and Randy Wilkes were not reliable and thus were not admissible under the statement against penal interest exception to the hearsay rule. Thus, trial counsel was not ineffective for failing to make a meritless objection.

Accordingly, the undersigned recommends that petitioner's seventh ground for relief be denied.

### 8.  Ground Eight

In his eighth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to call Lamont Galliday as a witness.  Petitioner claims that Mr. Galliday would have testified that he saw Michael Durley running from the scene of the crime.  Petitioner argues that this testimony would show that Michael Durley, and not Malik Nettles, was the shooter.  Respondents contend that trial counsel's decision not to call this witness was reasonable trial strategy.

The Missouri Court of Appeals held as follows with respect to petitioner's claim:

> In [petitioner's] third point, he alleges that trial counsel was ineffective for not calling Lamont Galiday as a witness at trial. [Petitioner] alleges that Galiday would have testified that he was walking his dogs in the vicinity of the shooting and that the first person he saw running from the area where the shooting occurred was [Michael] Durley. Galiday had testified in [Malik] Nettles's trial.  His testimony was discussed during the hearing on the state's motion in limine to exclude the statements. [Petitioner's] trial counsel stated during the hearing that Galiday was "not a particularly spectacular witness but he has to say what he has to say and basically he says I was in the neighborhood, I saw somebody running from the direction of the bus and you know, it wasn't Malik Nettles."  Even though the court granted the motion in limine, excluding evidence of another perpetrator, the trial court stated that it would allow Galiday to testify that he had seen someone else besides Nettles.  Counsel never called Galiday to testify.
>
> Trial counsel's decision not to call a witness is presumed to be trial strategy unless clearly shown to be otherwise.  *Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001); *State v. Clay*, 975 S.W.2d 121, 143 (Mo. banc 1998).  The decision to not call a witness is therefore "virtually unchallengeable' as a claim of ineffective assistance of counsel." *State v. Link*, 25 S.W.3d 136, 149 (Mo. banc 2000) (quoting Leisure v. State, 828 S.W.2d 872, 875 (Mo. banc 1992)).  To support a claim of ineffective assistance of counsel for failure to call a witness, the movant must show that the witness was available to testify, would  testify as called, and would provide a viable defense through his testimony. *Bucklew*, 38 S.W.3d at 398.
>
> We find nothing in the record to overcome the presumption that the decision to not call Galiday was anything but trial strategy.  Counsel took reasonable steps in investigating Galiday as a possible witness and argued successfully to be allowed to call him.  However, it is clear from the record that in the end counsel decided not to call Galiday as a matter of trial strategy because he was "not a particularly spectacular

witness."

        Point III is denied.

Resp't Ex. M at 8-9.

Counsel's decision not to call a particular witness is evaluated from the perspective of counsel at the time the decision was made. Parker v. Bowersox, 94 F.3d 458, 461 (8th Cir. 1996). A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.' " Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). An attorney's performance is "objectively reasonable" where counsel determined that testimony from witnesses identified by a defendant would be detrimental and rationally declined to call the witnesses as a matter of trial strategy. United States v. Smith, 62 F.3d 1073, 1078 (8th Cir. 1995).

Trial counsel stated as follows during the hearing on the State's motion to exclude the statements of Michael Durley:

> [w]ith regard to Lamont Galiday, I think that, you know, he was allowed to testify at the last trial. I saw his testimony. I mean, he's not a particularly spectacular witness but he has to say what he has to say and basically he says I was in the neighborhood, I saw somebody running from the direction of the bus and, you know, it wasn't Malik Nettles. And so--and I think that basically it may be, I'm not planning on--you know, if the Court says we can't get into the Durley thing then I'm not going to do it.

Resp't Ex. A-7 at 1309. Trial counsel explained that he would not call Mr. Galliday because he determined that he was not a "spectacular witness" after hearing his testimony at the trial of Malik Nettles. Trial counsel stated that Mr. Galliday's testimony would be even less helpful to the defense because the trial court excluded the statements of Michael Durley. Trial counsel's statements reveal that the decision not to call Mr. Galliday was reasonable trial strategy. Thus,

- 24 -

counsel was not ineffective for failing to call Mr. Galliday as a witness.

Accordingly, the undersigned recommends that petitioner's eighth ground for relief be denied.

### 9.        Ground Nine

In his ninth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to object to jury instruction Number 8, the verdict director for the second-degree murder of Kyunia Taylor. Petitioner claims the evidence presented at trial reveals that he either deliberated upon the murders and was guilty of first degree murder or he was not guilty of any crime. Respondents contend that trial counsel was not ineffective for failing to make a meritless objection.

The Missouri Court of Appeals held as follows:

> In his fourth point, [petitioner] asserts that trial counsel was ineffective for not specifically objecting to the submission of a second degree murder instruction concerning the shooting of Taylor. Further, [petitioner] states that trial counsel should have included this claim in his motion for new trial. [Petitioner] alleges that the evidence showed that he either deliberated on the murder, making him guilty of first degree murder, or he was not guilty at all.
> On direct appeal, this Court found this point of error to be wholly without merit. *Boyd*, 992 S.W.2d at 217. Thus, this issue cannot be relitigated under an ineffective assistance of counsel claim. *See Hannah*, 816 S.W.2d at 3.
> Point IV is denied.

Resp't Ex. M at 9.

The undersigned has found with respect to petitioner's first ground for relief that the trial court did not err in submitting the jury instructions for second-degree murder. As such, trial counsel was not ineffective in failing to make a meritless objection.

Accordingly, the undersigned recommends that petitioner's ninth ground for relief be denied.

### III.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998).  In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right.  The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Mark Boyd for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have eleven (11) days, until September 4, 2006, to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  24th  day of August, 2006.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE